# CIRCUIT COURT REPORTS.

## NEW SERIES—VOLUME V.

CAUSES ARGUED AND DETERMINED IN THE CIRCUIT
COURTS OF OHIO.

### AGREEMENTS BY COUNCIL TO EXPEND MONEY WITHIN THE INHIBITION OF THE BURNS LAW.

[Circuit Court of Warren County.]

MALINDA PULLEN v. JOHN E. SMITH ET AL and WILLIAM EVANS
ET AL v. JOHN E. SMITH ET AL.

Decided, July, 1904.

*Municipal Corporations—Bilateral Agreements by—Within the Inhibition of the Burns Law—Although Not Enforceable—Section* 1536
(205 M. C.).

The action of a municipal council purporting to be an agreement
involving the future expenditure of money, although admittedly
not legally enforceable is nevertheless within the inhibition of the
Burns Law, Revised Statutes 1536 (205 M. C.).

JELKE, J., GIFFEN, J., and SWING, J.
*Per Curiam.*

We find that the proposed use of the lot involved herein as
the site for a public library is within the public and municipal
use intended by the original donors of said lot.

1

A more serious question, however, is presented in the contention made by Mr. Evans, as a tax-payer, that the resolution passed by the Lebanon Council, on July 7, 1903, contravenes the Burns Law.  R. S., 1536, 205.  The issue thus arises: Mr. Carnegie made a proposition to the village of Lebanon in the following letter:

"2 East 91st Street, New York.
"20th February, 1903.
"W. CHESTER MAPLE, ESQ.,
"Lebanon, Ohio.
"*Dear Sir:*
"Responding to your communication in behalf of Lebanon. If the city agree, by resolution of council, to maintain a free public library at a cost of not less than one thousand dollars a year and provide a suitable site for the building, Mr. Carnegie will be pleased to furnish ten thousand dollars to erect a free public library building for Lebanon.
"Respectfully yours,
"JAS. BARTRAM,
"*Private Secretary.*"

Which offer is met by action of the Lebanon council on July 7, 1903, by the following resolution:

"*Resolved,* By the Council of the Village of Lebanon, State of Ohio, that the offer of Mr. Andrew Carnegie, made February 20, 1903, to furnish ten thousand dollars to erect a free public library building for Lebanon is hereby accepted; and

"*Resolved,* Further, that the council agrees for and on behalf of said village to maintain said free public library at a cost of not less than one thousand dollars a year, and to provide a suitable site for the same; be it further

"*Resolved,* That we express to Andrew Carnegie the sincere gratitude of the village for this beneficent gift, and that the clerk is directed to transmit to said donor a copy of these resolutions, wih a request for directions to this council for further mode of procedure."

R. S., 1536, 205, M. C., provides:

"No contract, agreement, or other obligation involving the expenditure of money shall be entered into; nor shall any ordinance, resolution, or order for the expenditure of money

be passed by the council, or by any board or officer of a municipal corporation, unless the auditor of the corporation, and if there is no auditor, the clerk thereof shall first certify to council that the money required for the contract, agreement or other obligation, or to pay the appropriation or expenditure, is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, which certificate shall be filed and immediately recorded.''

It is contended on behalf of the library trustees, and it was decided by the court below, that the resolution did not contravene the inhibition of this section of the statutes for two reasons: *First,* That it did not create an enforcible legal obligation against the village of Lebanon; and, *second,* that it was not an expenditure of money. It is admitted that the resolution of July 7 has not the binding force and effect of a contract, and it is said that it merely expresses the municipal sense or policy and has no binding effect upon subsequent councils; that it is only binding upon the moral sense and civic conscience of the citizens of Lebanon. This view of the resolution is taken by both sides of the controversy, and that its provisions will be religiously kept, is asserted by both sides.

We do not yield to counsel or to anybody, in high appreciation of the conscience and sense of moral responsibility of the good citizens of Lebanon, but we take a view a little different from that entertained by the trustees and their counsel as to the time for its exercise

There is no doubt but that, were it not for Revised Statutes, 1536 (205 M. C.), the letter of Mr. Carnegie and the resolution of council would constitute an enforcible bilateral legal agreement, and it is only because of this section of the statutes that it does not become such. The action of council purports to do that which the law says it can not do, and it is because the law says that it can not do this that council should not go through the form of doing, in good faith, a thing which is empty and vain. It is because such action, on its face, is committing the village of Lebanon to an unlawful position that council should not do it. Would it not be fairer and juster if the village of Lebanon said to Mr. Carnegie: ·''We appreciate your

kind offer and desire to avail ourselves of its beneficent provisions, and feel sure that the people of Lebanon, through their municipal officers, hereafter will keep the conditions imposed, but under the law we are powerless to commit the village to the conditions asked; but to the extent that it is declaratory of the public sense and policy of this municipality, we are willing to do so.  We can, lawfully, go no farther.''  To say that this action of council does not contravene this provision of the statutes, because such action of council is made invalid by this same section, is reasoning in a circle.  And if this were sufficient answer to the objection, it would be a universal answer to all objections to actions by municipal councils not in accordance with this statutory provision, the very object of which statutory provision is to prevent such action by councils.  It is to restrain municipal councils from purporting or pretending to do that which they are powerless to do, that such actions are enjoined.

It was held in the case of *The Elyria Gas & Water Co.* v. *The City of Elyria,* 57 O. S., 375:

''Where the proceedings of a municipal corporation are unauthorized and void, either for want of power or its unlawful exercise, and are designed to raise a fund by the sale of its bonds or by taxation to be applied to the object contemplated by the proceedings, a suit to enjoin them may be brought by a taxpayer, under Sections 1777, 1778, of the Revised Statutes, without waiting until the fund is raised ready for expenditure.  The abuse of corporate powers, within the purview of Section 1777, includes the unlawful exercise of powers possessed by the corporation, as well as the assumption of power not conferred.''

Further, it will not do to say that this action does not involve the expenditure of money.  If it does not do that, it does nothing else, and is meaningless.  That is all that Mr. Carnegie asks.  It is not in itself the expending of money, like an ordinance to pay, but the statute goes further, it provides against ''a resolution involving the expenditure of money.''  It is the initial step, which, if logically and consistently followed up, will inevitably result in the expending of public funds.  It was held by the

Sixth Circuit, in the case of *Rhodes* v. *The City of Toledo,* 6th C. C., p. 9:

"A municipal ordinance, providing for the condemnation of private property for street purposes is an ordinance for the expenditure of money within the meaning of Section 2702 of the Revised Statutes, and it is essential to the validity of such ordinance that the city auditor duly make and file the certificate required by said section."

This decision in based upon the case of *Ryan* v. *Hoffmann,* 26 O. S., 123:

"The ordinance condemning the land in question, is an ordinance for the expenditure of money."

The Circuit Court for the Second Circuit, in the case of *Tyler* v. *The City of Columbus,* 6 C. C., 224, takes a somewhat different view, for two reasons: *First.* That the money expended was to be assessed back on the property, and therefore was not an expenditure of public money, and, *second,* that the sum was uncertain and indeterminate until after condemnation proceedings were had before a jury, neither of which criticisms apply to the expenditure contemplated, and the initial step of which has already been taken in the case at bar. It is idle and not frank to say that this resolution does anything other than involve the expenditure of money, and this is admitted by everybody when they talk about a moral obligation.

There is, however, an objection to the maintenance of this tax-payer's suit which has not been raised by counsel for the defendants, and that is, that the suit is not brought under Section 1536-667 by the duly appointed legal officer of the municipality, nor is there an allegation that request had been made upon such officer, and that he has failed so to do as provided by Revised Statutes, 1536-668.

Nothwithstanding this defect in the proceedings, which is probably fatal, and will necessitate a new suit if the objection is urged, we have thought it best to decide the questions submitted as, after all, that is what counsel and the citizens of Lebanon want.

We are of opinion that the action by the council of the village of Lebanon is invalid and void, and that the trustees of the said library can not proceed in reliance thereupon, and therefore should be enjoined.

We trust and believe that if this matter is put to the donor in its right light,' that his gift may still be secured to the village of Lebanon. As it is, the matter can not proceed further on its present basis.

*Runyan & Stanley*, for plaintiff.

*John E. Smith* and *Mr. Morrill*, contra.